**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LEVERN BROWN,

    Plaintiff,

vs.                                                               CASE NO. 3:06-cv-1055-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claims for a period of disability, disability insurance benefits (DIB) and supplemental security (SSI) disability payments. 42 U.S.C. §§ 405(g), 1383(c)(3) (2006). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #22, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #23, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated April 25, 2007 (Doc. #15). The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

In the instant action, Plaintiff protectively filed applications for a period of disability and disability insurance benefits (DIB) and supplemental security income disability payments (SSI) on March 15, 2003 (Tr. 73-75, 266-69).[1] Plaintiff initially alleged a disability onset date of February 3, 2003 (Tr. 73, 266). However, Plaintiff's earnings record established substantial gainful employment with wages through part of 2004 (Tr. 76, 95). Plaintiff amended his alleged onset date of disability to May 1, 2004 (Tr. 291-94). Plaintiff claims an inability to work due to a sleeping disorder and/or narcolepsy; Plaintiff also claims diabetes as an impairment (Tr. 104-113, Disability Report-Adult). After being denied initially and upon reconsideration, Plaintiff requested a hearing (Tr. 37).

When Plaintiff acknowledged receipt of the Notice of Hearing, he informed the ALJ that he had been incarcerated since approximately July 29, 2005 (Tr. 48-54, 59). Plaintiff's counsel stated on the record Plaintiff was arrested in February 2005 (Tr. 294). The underlying record reveals Plaintiff was convicted of a felony offence and sentenced in July 2005 to seven years in prison (Tr. 52-54). Administrative Law Judge (ALJ) Stephen Calvarese agreed to conduct the administrative hearing by telephone for the claimant, i.e. the Plaintiff in this action (Tr. 60).

Due to mis-communication with Plaintiff's counsel, the first hearing did not go forward, but the subsequently scheduled second hearing was held on May 30, 2006 (Tr. 289-319). Plaintiff appeared and testified at the hearing telephonically. Vocational expert

---

[1]The record reveals Plaintiff has earnings sufficient to remain insured under DIB through June 30, 2008. Thus, he must establish disability on or before that date to be entitled to a period of disability and DIB. (Tr. 13, 97.)

Paul Dolan appeared and testified at the hearing in person. Plaintiff's counsel, attorney Michael Steinberg, appeared in person at the hearing. On July 24, 2006, ALJ Calvarese issued a hearing decision denying Plaintiff's claim (Tr. 11-18). The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 5-7).

The instant action was filed in federal court on November 30, 2006 (Doc. #1, Complaint) by Plaintiff's counsel of record, Mr. Steinberg. The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## SOCIAL SECURITY ACT ELIGIBILITY AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. §§ 404.1505, 416.905.[2] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. Plaintiff bears the

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2007 edition.

burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains

sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## ANALYSIS

Plaintiff was sixty-three years old at the time of the Commissioner's decision.[3] Plaintiff has an eighth grade education and past relevant work experience as a lawn maintenance worker and material handler (Tr. 106, 111, 114-17). When completing a pain and fatigue questionnaire in May 2003, Plaintiff listed his symptoms as "hypersomnia, sleep apnea, and chronic fatigue" (Tr. 131). In the same questionnaire, Plaintiff also stated "the medication that has been prescribed works well" (Tr. 132). The ALJ determined Plaintiff had the severe impairments of inefficient sleep syndrome, narcolepsy and chronic fatigue syndrome (Tr. 15). The ALJ further found these impairments neither singly or in combination met an impairment listing, nor limited Plaintiff from performing his past relevant work as a material handler (Tr. 15-17).

Plaintiff raises a single issue on appeal. Plaintiff asserts the "Commissioner erred in failing to fully and adequately consider the Plaintiff's inability to access effective medical treatment." (P's Brief at 6.) In this regard, Plaintiff has testified that while in prison, he is not given his Adderall medication (Tr. 300-01).[4] The Defendant counters the decision not to award benefits is supported by substantial evidence and that the ALJ was not required

---

[3]The record reveals Plaintiff was born on October 7, 1942 (Tr. 73).

[4]Adderall--amphetamine -dextroamphetamine is a central nervous system stimulant. It affects chemicals in the brain and nerves that contribute to hyperactivity and impulse control; is used to treat narcolepsy and attention deficit hyperactivity disorder. *See* Drug Information Online at http://www.drugs.com/mtm/adderall.html (last visited March 20, 2008).

to consider Plaintiff's inability to access his medications while in prison (D's Brief at 4, 6-8). For the reasons stated below, the Court finds Plaintiff's argument is without merit.

First, Plaintiff's argument ignores that the ALJ did not find Plaintiff "not disabled" based on noncompliance with prescribed treatment. In that situation, the Regulations allow denial of disability only if the claimant fails to follow prescribed treatment without a good reason. See 20 C.F.R. §416.930. Social Security Ruling 82-59 recognizes that noncompliance is only an issue when the individual meets Social Security's definition of disability, but the claimant refuses to follow prescribed treatment that is clearly expected to restore capacity to engage in substantial gainful activity. In those circumstances, the Commissioner must determine whether the noncompliance is justifiable by inquiring further of both claimant and, if necessary, the treating source. SSR 82-59, 1982 WL 31384 (S.S.A. 1982). In this case, however, the ALJ determined Plaintiff was not disabled under the Social Security Act from the alleged date of disability onset through the date of the decision (Tr. 17). In other words, at no point in time during the relevant period, did the ALJ determine Plaintiff met Social Security's definition of disability.

In reaching his determination that Plaintiff was not disabled, the ALJ's decision reveals a thorough consideration of the medical evidence of record and of Plaintiff's testimony, including Plaintiff's subjective complaints, contrasted with the medical evidence (Tr. 15-17). It is clear the ALJ took Plaintiff's testimony concerning Plaintiff's inability to obtain all his medications while incarcerated into consideration when making his credibility finding about Plaintiff (*see* Tr. 16). In his decision, the ALJ reiterated Plaintiff's testimony that "[h]e said that his condition worsened because he did not receive his medications in prison." (Tr. 16.) However, after considering all the evidence of record, the ALJ found

6

Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (Tr. 16).

Plaintiff testified his condition had gotten worse since May of 2004 (Tr. 300). Plaintiff was asked the question, "When you went to jail did they continue to give you the Adderall?" Plaintiff replied, "they won't give me the medicine here." (Tr. 301.) Plaintiff further testified, "I sleep all the time now because they won't give me Adderall." And, "when I come downstairs to watch TV I fall asleep and I go back upstairs and lay down and I wake up. When I wake up I come back down, ten minutes, I'm asleep again." (Tr. 301-02.) It appears to the Court that each of these statements goes to Plaintiff's claimed persistence, intensity and limiting effects of his condition, which the ALJ determined were not entirely credible. Plaintiff has not attacked the ALJ's credibility finding. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence). Here, substantial evidence supports the ALJ's credibility finding.

The record reveals Plaintiff has long complained of sleep disorders, but nonetheless maintained substantial gainful activity. For example, on August 20, 2001, Plaintiff reported to Dr. Victor A. Maquera, a treating physician, that he "experienced drowsiness for many years" and "a few hours after he goes to work, he is extremely sleepy and has to go somewhere and sleep" (Tr. 218-19). Going back further in time, records from Dr. Agustin Castellanos, M.D., with the Palm Beach Neurological Group, showed a consultation for sleep attacks, possible narcolepsy, in July 1996 (Tr. 181-82). A Multiple Sleep Latency

Test conducted at the Jupiter Hospital, Inc., on August 8-9, 1996, suggested "possibility of narcolepsy" (Tr. 166).

Subsequent to Plaintiff's applications for disability benefits, Dr. Maquera reported Plaintiff's symptoms were controlled with Adderall (*see, e.g.*, Tr. 196, office follow-up dated November 10, 2004; Tr. 197, office follow-up July 6, 2004). In a July 15, 2003 consultative examination ordered by the Office of Disability Determinations, Dr. William Choisser, M.D., found Plaintiff had "[n]arcolepsy episodes several times per week, *once the Adderall is out of his system*" (Tr. 239, emphasis added). In determining that Plaintiff retained the ability to perform work-related activities despite his impairments, the ALJ gave great weight to the opinion of Plaintiff's treating physician, Dr. Victor A. Maquera, that Plaintiff did well when he took his medication as directed, did not fall asleep during the day, and was able to drive without feeling sleepy (Tr. 17, 196-97, 202).

In sum, substantial evidence supports the ALJ's credibility finding, a finding which encompasses Plaintiff's statements concerning his physical (and mental) condition while incarcerated.

In assessing Plaintiff's residual functional capacity, the ALJ also considered assessments provided by two state agency physicians, Dr. Daria F. Marranzin and Dr. Nicholas H. Bancks, who found that Plaintiff had no exertional limitations but should avoid exposure to hazards such as heights and moving machinery (Tr. 16-17, 241-48). Plaintiff does not take issue with the RFC assessment. When determining whether Plaintiff could perform his past relevant work, although not required, the ALJ utilized vocational expert (VE) testimony, to find Plaintiff would be able to perform his past relevant work as a material handler despite his limitations (Tr. 17 Finding 6, Tr. 312-14). Thus, irrespective

of Plaintiff's incarceration, substantial evidence supports ALJ's decision that Plaintiff retained the RFC to perform his past relevant work as a material handler despite his impairments. Plaintiff's argument to the contrary is without merit.

In Plaintiff's brief, he appears to concede that his alleged disabling condition flows directly from his asserted lack of access to medication (*see* P's brief at 6-8). Plaintiff also points to the ALJ's duty to develop a full and fair record and implies the ALJ failed to do so by "not fully and adequately" considering the Plaintiff's inability to access effective medical treatment (P's Brief 6-8). In support of this argument, Plaintiff relies primarily on *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988), in which the court held that although a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, he or she is excused from noncompliance. *Id.* at 1213 (citations omitted). Plaintiff also refers to *Cronon v. Barnhart*, 244 F.Supp.2d 1286 (N.D. Ala.2003) for support, where the court extended the ruling in *Dawkins* to a claimant's inability to afford certain tests. However, as Defendant notes, *Dawkins* and *Cronan* are readily distinguishable from the case at bar because they do not involve a prisoner's access to treatment as a result of his incarceration.

Plaintiff goes on to claim the ALJ failed to apply proper legal standards in making his decision to deny benefits (P's Brief at 8), and this case should be reversed and remanded with direction for payment as a matter of law (P's Brief at 8). Somewhat confusing, however, is Plaintiff's follow-up argument wherein he implicitly concedes the record in this case was fully developed. Plaintiff asserts "[r]eversal is warranted where the record is fully developed and, upon application of the correct legal standards, the claimant is entitled to benefits." (P's brief at 9 (internal citations omitted).) Plaintiff points to case law

in which the court held that reversal and remand for award of benefits was required where there was no need to take additional evidence, or to complete the sequential evaluation, and substantial evidence existed in the record to support a finding of disability (P's brief at 9) (citing *Richardson v. Apfel*, 44 F.Supp. 2d 1264, 1266 (M.D. Fla. 1998)).

Notwithstanding the inherent conflict in Plaintiff's argument on this point, Plaintiff ignores the obvious distinction with his case and those cited in his brief is, in fact, his incarceration. Although Plaintiff acknowledged that his condition is controlled with medication (*see* Tr. 131-33), he argues that he should still be found disabled, based on his testimony at the hearing (Tr. 300-01), that he has been "affirmatively denied access to medication" since he has been in prison (P's Brief at 8). The Court disagrees. This issue has been addressed by the legislature, by the Commissioner's *Program Operations Manual System* (POMS) and the SSA's policy statements with the issuance of Social Security Ruling 83-21.

Public Law 96-473 (HR 5295) was enacted by Congress on October 19, 1980. The legislation was identified as an "Act to amend the Social Security Act with respect to the retirement test, to reduce spending under Title II of the Social Security Act, and for other purposes." The provisions relevant to this case have been codified at 42 U.S.C. § 423(d)(6)(A)-(B), which provide under the definition of disability:

> (6)(A) Notwithstanding any other provision of this subchapter, any physical or mental impairment which arises in connection with the commission by an individual (after October 19, 1980) of an offense which constitutes a felony under applicable law and for which such individual is subsequently convicted, or which is aggravated in connection with such an offense (but only to the extent so aggravated), shall not be considered in determining whether an individual is under a disability.

> (B) Notwithstanding any other provision of this subchapter, any physical or mental impairment which arises in connection with an individual's confinement in a jail, prison, or other penal institution or correctional facility pursuant to such individual's conviction of an offense (committed after October 19, 1980) constituting a felony under applicable law, or which is aggravated in connection with such a confinement (but only to the extent so aggravated), shall not be considered in determining whether such individual is under a disability for purposes of benefits payable for any month during which such individual is so confined.

42. U.S.C. § 423(d)(6)(A)-(B) (2004).

In 1983, the SSA issued its Program Policy Statement to further explain the provisions of Public Law 96-473 and how those provisions were to be applied to applications for Social Security disability insurance benefits. *See* SSR 83-21, 1983 WL 31258 (S.S.A. 1983). The Commissioner incorporated the Program Policy Statement into the Program Operations Manual System (POMS) under section DI 10105.105, *available at* http:/policy.ssa.gov/poms.nsf/links/0410105105. An ALJ is instructed to disregard the development of or aggravation to any impairment that occurs in connection with an individual's confinement due to conviction of a felony committed after October 19, 1980. *See id.* More specifically on point for the case before this Court, a condition that "is aggravated" during "an individual's confinement in a jail, prison, or other penal institution or correctional facility pursuant to such individual's conviction of an offense committed after October 19, 1980, constituting a felony under applicable law, shall not be considered in determining whether such individual is under a disability for purposes of benefits payable for any month during which such individual is so confined." SSR 83-21 at *1.

Although Social Security Rulings and POMS do not have the force and effect of law, those rulings that are a reasonable and permissible interpretation of the Social Security Act will be given deference by the courts. *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir.

2003); *Fair v. Shalala*, 37 F.3d 1466 (11th Cir. 1994). In this case, the Commissioner's interpretation of the 1980 amendment to the Social Security Act, codified at 42 U.S.C. § 423, is reasonable.

## CONCLUSION

Contrary to Plaintiff's assertion, his is not a case in which an impoverished individual is unable to follow prescribed treatment to alleviate a disabling condition. This is a case in which substantial evidence in the record supports the ALJ's determination that the Plaintiff was not disabled at any point in time from his alleged onset date through the date of the decision.[5]

For the foregoing reasons, the undersigned finds the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. The Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 24th day of March, 2008.

Copies to all counsel of record
and *pro se* parties, if any

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

---

[5] To the extent that Plaintiff is unable to get a specific medication while incarcerated, the Court would give deference to 42 U.S.C. § 423(d)(6)(A)-(B) and SSR 83-21 for that period of time.